Martin Fox (SBN 155783)
  mfox@bleaufox.com
Edward D. Baker (SBN 311439)
  ebaker@bleaufox.com
BLEAU FOX, A P.L.C.
3575 Cahuenga Blvd. West, Suite 580
Los Angeles, California 90068
Telephone: (323) 874-8613
Facsimile: (323) 874-1234

Attorneys for Debtor in Possession,
Business Solutions Transport, Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA

In re:

Business Solutions Transport, Inc.

                    Debtor in Possession.

Chapter 11 Case No.: 2:18-bk-12637-SK

**MOTION FOR ENTRY OF ORDER:**

1) **AUTHORIZING DEBTOR TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS;**

2) **AUTHORIZING ASSIGNMENT OF CERTAIN UNEXPIRED LEASES;**

3) **ESTABLISHING BIDDING PROCEDURES AND APPROVING BREAKUP FEE**

4) **GRANTING OTHER AND FURTHER RELIEF; AND**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Voluntary Chapter 11 Filed:    03/09/2018

**Hearing:**

**Date:**      **May 31, 2018**
**Time:**      **8:30 a.m.**
**Location:**  **Courtroom 1575**
               **225 East Temple Street**
               **Los Angeles, CA 90012**

---

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

## TABLE OF CONTENTS

I.     STATEMENT OF JURISDICTION AND VENUE ........................................... 1

II.    STATEMENT OF FACTS ............................................................................ 1

A. Case Background and Description of Debtor's Business................................ 1

B. The Debtor's Secured Debt........................................................................ 2

C. Other Truck Leases .................................................................................. 4

D. Unexpired Leases for Office / Warehouse Space ......................................... 4

E. Disclosure of Debtor's Relationship With the Purchaser .............................. 4

F. The Marketing of Debtor's Assets ............................................................. 5

G. The Asset Purchase Agreement ................................................................. 6

H. The Proposed Bidding Procedures and Breakup Fee..................................... 8

III.   DISCUSSION ........................................................................................... 9

A. The Court Should Authorize the Debtor to Sell the Assets to Purchaser in
   Accordance with the Terms of the Asset Purchase Agreement ..................... 9

   i. Accurate and Reasonable Notice Has Been Given to All Interested
      Parties ............................................................................................. 10

   ii. The Terms of the Sale Validate Debtor's
       Sound Business Purpose.................................................................... 11

   iii. The Sale Price is Fair and Reasonable and Cash
        Will Be Left Over to Pay Unsecured Creditors ................................. 13

   iv. The Sale is Made in Good Faith.................................................... 15

B. The Sale of Assets Should Be Free and Clear of All Interests, Including Liens,
   Claims, and Encumbrances Under Bankruptcy Code Section 363(f) ......... 17

   i. The Sale is Permissible Pursuant to Section 363(f)(2)
      of the Bankruptcy Code.................................................................... 17

C. The Court Should Authorize the Debtor's Assumption and Assignment of
   Certain Unexpired Leases Pursuant to the Proposed Procedures................. 18

i

D. The Court Should Approve the Bidding Procedures and the Breakup Fee
Described Herein ....................................................................................... 21

E.  The Debtor Requests that the Court Waive the Fourteen-Day Waiting Periods
Under Bankruptcy Rules 6004(h) and 6006(d) ........................................ 22

IV.    CONCLUSION ................................................................................................. 23

ii

1

## TABLE OF AUTHORITIES

2

3  Cases:                                                                    Page(s):

4

*Cinicola v. Scharffeberger*, 248 F.3d 110  (3d Cir. 2001) ................................................. 19

*Citicorp Venture Capital, Ltd. v Comm. of Creditors Holding Unsecured Claims*
   (In re Papercraft Corp.),  211 B.R. 813 (W.D.Pa.1997) ...................................... 15

*Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*,
   63 B.R. 361 (Bankr. N.D. Ohio 1986)  ................................................................... 14

*Comm. of Equity SEC Holders v. Lionel Corp.* (*In re Lionel Corp.*),
   722 F.2d 1063 (2d Cir. 1983) ................................................................................. 9

*Doehring v. Crown Corp. (In re Crown Corporation)*,
   679 F.2d 774 (9th Cir.1982)..................................................................................20

*Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*,
   175 B.R. 855 (Bankr. D.N.J. 1994) .......................................................................20

H.R.Rep. No. 595, 95th Cong., 1st Sess. 345 (1977) ..........................................19

*In re Abbotts Dairies of Pennsylvania, Inc.*,
   788 F.2d 143 (3d Cir. 1986) ..............................................................................9, 15

*In re AEG Acquisition Corp.*,
   127 B.R. 34, 44 (Bankr.C.D.Cal.1991) ..................................................................18

*In re Alpha Industries, Inc.*,
   84 B.R. 703, 706 (Bankr. D. Mont. 1988) .....................................................15, 20, 21

*In re Ames Dep't Stores, Inc., Eastern Retailers Service Corp., et al.*,
   115 B.R. 34 (Bankr.S.D.N.Y.1990) .......................................................................21

*In re Apex Oil Co.*,
   92 B.R. 847 (Bankr. E.D. Mo. 1988) .....................................................................15

*In re Atlanta Packaging Products, Inc.*,
   99 B.R. 124, 131 (Bankr. N.D. Ga. 1988) ............................................................14

*In re Bakalis*, 220 B.R. 525 (Bankr.E.D.N.Y.1998) .............................................15

*In re Bowman*, 194 B.R. 227 (Bankr.D.Ariz.1995) ............................................18

*In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) ......................19

*In re Central Fla. Metal Fabrication, Inc.*,
   190 B.R. 119 (Bankr. N.D. Fla. 1995) ...................................................................17

*In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986)...............12

*In re Continental Country Club, Inc*
   114 B.R. 763 (Bankr.M.D.Fla.1990) .....................................................................17

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*In re Crow Winthrop Operating Partnership,*
    241 F.3d 1121 (9th Cir. 2001)..................................................................*18*

*In re Crowthers McCall Pattern, Inc.,*
    114 B.R. 877 (Bankr.S.D.N.Y.1990) ........................................................*21*

*In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del. 2009) .........................*19*

*In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031 (D. Del. 2002) ...............*19*

*In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) ..................*9*

*In re Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983)......................*15*

*In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998) .....................................*15*

*In re Fleming Cos., Inc.*, 499 F.3d 300, 305 (3d Cir. 2007) ..........................*19*

*In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y.1996) ..........................................*17*

*In re Headquarters Dodge, Inc.*, 13 F.3d 674, 682 (3d Cir. 1994) .................*18*

*In re Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981) .....................................*9*

*In re Industrial Valley Refrig. and Air Cond. Supplies, Inc.,*
    77 B.R. 15 (Bankr. E.D. Pa. 1987)..........................................................*14*

*In re Integrated Resources, Inc.*, 135 B.R. 746
    (Bankr. S.D.N.Y. 1992), aff'd, 147 B.R. 650 (S.D.N.Y. 1992).................*14*

*In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir.1996) ......................*17*

*In re Lionel Corp.*, 722 F.2d 1063 (2d Cir. 1983) .......................................*11, 12*

*In re M Capital Corp.*, 290 B.R. 743 (B.A.P. 9th Circuit, 2003) ...................*15*

*In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ....................*9*

*In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr.S.D.Fla.1991) .............*17, 18*

*In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991) .....................*9*

*In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) .................*18*

In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978) .............*15*

*In re Schipper (Fulton State Bank v. Schipper),*
    933 F.2d 513, 515 (7th Cir. 1991) ...........................................................*9*

*In re Snyder*, 74 B.R. 872, 878 (Bankr. E.D. Pa. 1987) ................................*14*

*In Re Walter* 83 B.R. 14, 19 (9th Cir.B.A.P.1988) .....................................*9, 11*

*In re Whittemore*, 37 B.R. 93, 94 (Bankr.D.Or.1984) ..................................*17*

*In re Wilde Horse Enterprises,*
    136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ...........................................*14, 15*

*In re Winter*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988) ..................................*9*

*Lubrizol Enterprises v. Richmond Metal Finishers,*
    756 F.2d 1043, 1047 (4th Cir.1985)........................................................*18*

*Pelican Homestead v. Wooten (In re Gabeel),*
    61 B.R. 661 (Bankr. W.D. La. 1985) .......................................................*20*

iv

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

*Penn Mutual Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*,
    134 B.R. 165 (Bankr.D.Md.1991) .................................................................. *15*

*Titusville Country Club v. Pennbank (In re Titusville Country Club)*, 128 B.R. 396, 399
    (Bankr. W.D. Pa. 1991) ......................................................................... *9*

*Weingarten Nostat, Inc. v. Service Merchandise Company, Inc.*,
    396 F.3d 737, 742 (6th Cir. 2005) ........................................................... *18*

<u>Statutes:</u>

11 U.S.C. § 101(31) ................................................................................. *5, 16*

11 U.S.C. § 102(1)(A) ................................................................................. *10*

11 U.S.C. § 363(m) ..................................................................................... *1*

11 U.S.C. § 365(a) ..................................................................................... *17*

11 U.S.C. § 365(b)(1) ................................................................................. *18*

11 U.S.C. § 365(f) ..................................................................................... *18*

11 U.S.C. § 365(f)(1) ................................................................................. *18*

11 U.S.C. § 365(f)(2) ................................................................................. *18*

11 U.S.C. § 365(f)(2)(B) ............................................................................. *18*

11 U.S.C. § 365(k) ..................................................................................... *19*

11 U.S.C. §105(a) ....................................................................................... *1*

11 U.S.C. §363 (b) ............................................................................ *1, 9, 11, 13*

11 U.S.C. §363 (b)(1) ............................................................................ *10, 14*

11 U.S.C. §363 (b)(2) ................................................................................. *10*

11 U.S.C. §363(f) .............................................................................. *1, 16, 17*

11 U.S.C. §363 ................................................................................... *5, 9, 20*

11 U.S.C. §365 ........................................................................................... *1*

11 U.S.C. §506 ........................................................................................... *1*

11 U.S.C. §1107 ......................................................................................... *1*

11 U.S.C. §1107(a) ..................................................................................... *17*

28 U.S.C. § 157 ........................................................................................... *1*

28 U.S.C. § 157(b) ..................................................................................... *1*

28 U.S.C. § 1334 ......................................................................................... *1*

28 U.S.C. § 1408 ......................................................................................... *1*

28 U.S.C. § 1409 ......................................................................................... *1*

FED.R.BANKR.P.2002 ............................................................................... *20*

FED.R.BANKR.P.2002(a)(2) ............................................................... *1,12,11*

FED.R.BANKR.P.2002(c)(1) ................................................................. *10, 11*

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

FED.R.BANKR.P.2002(i)....................................................................................................10

FED.R.BANKR.P.2002(k) ..............................................................................................10,11

FED.R.BANKR.P.6004.....................................................................................................1, 20

FED.R.BANKR.P. 6004(a)...........................................................................................10, 11

FED.R.BANKR.P.6004 (c)............................................................................................10, 11

FED.R.BANKR.P.6004(f)....................................................................................................20

FED.R.BANKR.P.6006(a) ............................................................................................1, 11

FED.R.BANKR.P.6006(c) ............................................................................................1, 11

FED.R.BANKR.P.6006(d)...................................................................................................1

FED.R.BANKR.P.9006 .......................................................................................................1

FED.R.BANKR.P.9007 .......................................................................................................1

FED.R.BANKR.P.9014 ..............................................................................................1, 10, 11

L.B.R. 6004-1 .............................................................................................................1, 11

L.B.R. 6004-1(f)...............................................................................................................10

L.B.R. 9013-1...................................................................................................................1

L.B.R 9013-1(d)(2).........................................................................................................10

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF JURISDICTION AND VENUE

This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter relates to the administration of the Debtor's bankruptcy estate and is accordingly a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this case is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested in this Motion are (i) Sections 105(a) and 363(b) and (f), 365, 506 and 1107 of Title 11 of the United States Code (the "Bankruptcy Code"), (ii) Rules 2002(a)(2), 6004, 6006(a), (c), and (d), 9006, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure, and (iii) Local Bankruptcy Rules 6004(1) and 9013-1.

### II.

### STATEMENT OF FACTS

**A.    Case Background and Description of Debtor's Business**

Debtor is a company engaged in the transportation of high end copy machines and work stations for businesses in the Los Angeles and surrounding areas. Theresa Peifer Dec. ¶3. Debtor stores and transports this type of office equipment, and has built a reputation in the Los Angeles and the surrounding areas as a reliable, extremely efficient provider of these services. Debtor has been in business for approximately nineteen (19) years. *Id.*

In the face of mounting debt, and forced to defend a employment lawsuit in state court, Debtor filed for voluntary chapter 11 on March 9, 2018. Theresa Peifer Dec. ¶4. The protections and tools afforded to a chapter 11 debtor in possession have provided Debtor the breathing room it needs to adjust its balance sheet, optimize operations, and ultimately form a strategy for an asset sale of substantially all of Debtor's assets that is in the best interests of the estate and Debtor's creditors. *Id.*

Since Debtor filed for voluntary chapter 11, it has been operating as a debtor in possession under 11 U.S.C. § 1107. Theresa Peifer Dec. ¶5. All pre-petition bank accounts were immediately closed as of the filing date, and three (3) new DIP accounts were opened. *Id.* An additional DIP Utility account was opened pursuant to the Court's *Order Approving Adequate Assurance to Utility*

1

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1 | *Providers*, and a deposit of $4,445 was made as adequate assurance to said utility providers. *Id.*

2 | In approximately the end of April, 2018, Debtor, and Debtor's attorney, began to negotiate

3 | and solidify the terms of a potential asset sale with Peifer Trucking, Inc. (the "Purchaser"), a

4 | company that operates in a similar space out of Texas. Theresa Peifer Dec. ¶6. As this chapter 11

5 | case has progressed, it has become clear that a sale of substantially all of Debtor's assets is in the

6 | best interests of the estate, and Debtor's creditors. *Id.* Debtor's insurance is set to expire on June 19,

7 | 2018, and at least one of Debtor's landlords for its leased warehouse space has declined to renew its

8 | lease with Debtor. *Id.* Additionally, Debtor's security agreements with its priority secured creditor,

9 | Commercial Credit Group, expose Debtor to the risk of a total collapse should Debtor be unable to

10 | make payment for any reason, as those agreements are secured against substantially all of Debtor's

11 | assets, including cash collateral and accounts receivables. *Id.* Furthermore, while Debtor's budget

12 | currently provides for a small net cash flow, the budget only allows for payment of minimal

13 | operating expenses, and does not include payment toward a number of Debtor's liabilities. *Id.*

14 | With a number of events on the horizon which could trigger a liquidation or total collapse of

15 | Debtor's business, Debtor entered into the Asset Purchase Agreement with Purchaser. The "big

16 | picture" for the Asset Sale is to pay all of Debtor's secured creditors in full, assign various leases to

17 | Purchaser, and leave a sizable amount of cash left over from the net proceeds with which to pay

18 | unsecured creditors. The sale will mitigate the risk of impending liquidation triggering events, and

19 | will provide a greater benefit to the estate as a whole than either a reorganization or a forced

20 | liquidation or conversion to chapter 7.

21 | **B.    The Debtor's Secured Debt**

22 | The Debtor has two secured creditors: Commercial Credit Group, Inc. and Purchaser.

23 | Theresa Peifer Dec. ¶7. CCG is Debtor's priority secured creditor. Theresa Peifer Dec. ¶8. CCG

24 | loaned Debtor money to lease four transportation trucks. *Id.* The loan agreements are securitized

25 | against substantially all of Debtor's assets including accounts receivables and cash collateral. *Id.* On

26 | April 16, 2018, Debtor and CCG reached an agreement and entered into a stipulation [Doc. #52] for

27 | Debtor to continue to use cash collateral in exchange for additional adequate assurance to CCG in

28 |

2

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1  the form of replacement liens. *Id.* The stipulation also enables CCG to repossess the trucks, and take

2  control of Debtor's other collateral, including cash collateral and accounts receivables, when any

3  number of triggering events occur, including any lapse in Debtor's insurance. *Id.* The trucks leased

4  from CCG, and payoff amounts remaining on each truck/loan, are listed in the table below:

| YEAR | MODEL | MAKE | VIN | STATE | DISPOSITION | EST PAYOFF |
|------|-------|------|-----|-------|-------------|------------|
| 2015 | KW / BOB | Kenworth T270 | 2NKHHM6X2FM429397 | CA | LENDER COMMERCIAL CREDIT | $16,369 |
| 2016 | KW / BOB | Kenworth T270 | 2NKHHM6X5GM114014 | CA | LENDER COMMERCIAL CREDIT | $46,901 |
| 2016 | KW /BOB | Kenworth T270 | 2NKHHM6X6GM128133 | CA | LENDER COMMERCIAL CREDIT | $58,760 |
| 2017 | KW / BOB | Kenwroth T270 | 2NKHHM6X0HM159864 | CA | LENDER COMMERCIAL CREDIT | $67,004 |

18  The total combined payoff amount for all CCG loans is approximately $198,892.20. *Id.*

19      Debtor's other secured creditor is Purchaser. Theresa Peifer Dec. ¶9. On or about February

20  19, 2018, Purchaser loaned Debtor $100,000 in order to help Debtor's struggling business and infuse

21  Debtor with the cash it needed to continue operating. *Id.* Without this cash infusion, Debtor's

22  business likely would have collapsed, and Debtor most likely would have been forced to file for

23  chapter 7. *Id.* Purchaser's loan is also secured against substantially all of Debtor's assets, including

24  cash collateral and accounts receivables. *Id.* The full amount of Purchaser's loan remains

25  outstanding. *Id.*

26      **IF CREDITORS BELIEVE THAT THEY HAVE TAKEN STEPS TO PERFECT ANY**

27  **SECURITY INTEREST THAT IS NOT REFLECTED HEREIN THEN SUCH CREDITORS**

28  **SHOULD THUS INFORM THE COURT, THE DEBTOR AND THEIR FELLOW LIEN**

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1    **HOLDERS IN THEIR RESPONSE TO THIS MOTION.**

2    **C.    Other Truck Leases**

3         In addition to the trucks leased from CCG, Debtor and the Purchaser are parties to a certain

4    Master Equipment Lease Agreement dated August 1, 2015, wherein the Debtor is the lessee under a

5    capital lease arrangement of one (1) 2015  Mercedes Sprinter vehicle and two (2) 2016 Mercedes

6    Sprinter Vehicles having an aggregate value of not more than $75,000, and which have an

7    outstanding balance of approximately $92,583.66. Theresa Peifer Dec. ¶10.

8    **D.    Unexpired Leases for Office / Warehouse Space**

9         Debtor leases two spaces out of which its business operates. Theresa Peifer Dec. ¶11. One is

10   located at 605 West Victoria Street, Compton, CA 90220 (the "Compton Property"), and the other is

11   located at 2157 Commerce Place, Building #4, Hayward, CA 94545 (the "Hayward Property"). *Id.*

12        The landlord at the Compton Property is creditor ComRef So. Ca. Ind. Sub F, LLC (the

13   "Compton Landlord"). Theresa Peifer Dec. ¶12. The monthly base rent at the Compton Property is

14   approximately $22,367. *Id.* The Compton Property lease is set to expire January 1, 2019. *Id.* Debtor

15   does not hold any option to extend the lease, and the Compton Landlord has not offered to extend

16   the lease for the Compton Property at this time. *Id.*

17        The landlord at the Hayward Property is creditor ProLogis TLF (East Bay) LLC (the

18   "Hayward Landlord"). Theresa Peifer Dec. ¶13. The monthly base rent at the Hayward Property is

19   approximately $6,412. *Id.* The Hayward Property lease will expire on February 12, 2019. *Id.* Debtor

20   possesses no option to extend the Hayward Property lease, and the Hayward Landlord has

21   affirmatively stated that no such option will be provided, weighing against the prospect of

22   reorganization and presenting a potential liquidation triggering event.  *Id.*

23   **E.    Disclosure of Debtor's Relationship With the Purchaser**

24        Debtor has two equity shareholders: Theresa Peifer (55%), and James Peifer (45%). James

25   Peifer is Theresa Peifer's ex-husband. Theresa Peifer Dec. ¶14. The two were divorced in 2013. *Id.*

26   James Peifer previously held the position of President of Debtor, but is no longer employed by

27   Debtor in any capacity. *Id.* James Peifer no longer has any role in, or control over, the Debtor's

28

4

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1   operations or business decisions. *Id.* Purchaser is owned by James Peifer's brother and sister, Art

2   Peifer and Barbra Peifer. *Id.* While Debtor does not believe that Purchaser or any of its

3   employees/principals falls within the definition of "insider" under 11 U.S.C. § 101(31), Debtor is

4   disclosing this connection out of an abundance of caution. *Id.*

5   As stated above, Debtor and the Purchaser are parties to a certain Master Equipment Lease

6   Agreement dated August 1, 2015, wherein the Debtor is the lessee under a capital lease arrangement

7   of one (1) 2015 Mercedes Sprinter vehicle and two (2) 2016 Mercedes Sprinter Vehicles having an

8   aggregate value of not more than $75,000, and which have an outstanding balance of approximately

9   $92,583.66. Theresa Peifer Dec. ¶15. Purchaser also provided $100,000 in prepetition financing in

10   order to help Debtor continue operating prior to filing for chapter 11. *Id.* While Purchaser does not in

11   any way control or influence Debtor's business or operations, Purchaser is familiar with Debtor's

12   business because Purchaser operates a similar transportation business, albeit out of Texas. *Id.* In this

13   regard, Purchaser is the perfect candidate to purchase Debtor's assets, and any transition expenses or

14   friction created by the sale will be kept to a minimum because of Purchaser's familiarity with

15   Debtor's line of business. *Id.*

16   **F.   The Marketing of Debtor's Assets**

17   On March 9, 2018, Debtor filed a voluntary chapter 11 petition. From the beginning of this

18   case, Debtor has considered the potential benefits of seeking an asset sale under 11 U.S.C. §363.

19   Baker Dec. ¶3. Within weeks of filing the petition, Debtor's counsel began to receive interest from

20   potential buyers to buy pieces of Debtor's assets, particularly the working trucks leased by Debtor

21   and the related equipment. Baker Dec. ¶4. Two particular prospective buyers expressed serious

22   interest in buying specifically Debtor's leased truck assets. Baker Dec. ¶5. Those entities were Hazel

23   Lane Auto Sales Inc., located at 181 Franklin Ave., Suite 605, Valley Stream, New York, 11581, and

24   Perfection Industrial Sales, located at 2550 Arthur Ave., Elk Grove Village, IL 60007. *Id.*

25   Debtor's counsel followed up with these prospective buyers regarding the sale of Debtor's

26   truck assets and related equipment. Baker Dec. ¶6. Once it became clear to Debtor's counsel that an

27   asset sale done correctly is in the best interests of the estate and all Debtor's creditors, Debtor's

28

5

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1  counsel actively sought offers from each of these prospective buyers, while also negotiating with

2  Purchaser for a sale of substantially all Debtor's assets, rather than bits and pieces. *Id.*

3      Ultimately, Hazel Lane Auto Sales Inc. offered Debtor $10,000 per truck for Debtor's leased

4  trucks. Baker Dec. ¶7. A true and correct copy of counsel's email correspondence with Hazel Lane

5  Auto Sales Inc. is attached to the Declaration of Edward D. Baker as <u>Exhibit 1</u>. Perfection Industrial

6  Sales ultimately decided that Debtor's truck assets were too small for them to make an offer.  Baker

7  Dec. ¶8. A true and correct copy of counsel's email correspondence with Perfection Industrial Sales

8  is attached to the Declaration of Edward D. Baker as <u>Exhibit 2</u>.

9      No other prospective buyers made serious offers or inquiries regarding a sale of the Debtor's

10  truck assets, and none have offered to buy substantially all of Debtor's assets in one sale. Baker Dec.

11  ¶9. Debtor has provided notice of the sale hearing and bidding procedures to the prospective buyers

12  mentioned above. Baker Dec. ¶10. Should any other potential buyer make an inquiry between now

13  and the time of the hearing, they will promptly be provided with notice of the hearing and bidding

14  procedures so that they may have a chance to put forward an overbid for the benefit of the estate. *Id.*

15      The terms of the Asset Purchase Agreement between Debtor and Purchaser provides the

16  highest value to the estate. Baker Dec. ¶11. If Debtor were to sell only its truck assets, its accounts

17  receivables would become worthless. *Id.* Likewise, if Debtor sold off its accounts receivables in a

18  separate asset sale, it could not make payments on the trucks it leases, and also Debtor's secured

19  creditors Commercial Credit Group, Inc. ("CCG") and Purchaser, have a securitized interest in

20  Debtor's accounts receivables, and have no incentive to allow such a sale of accounts receivables, as

21  it would devalue their collateral. *Id.*

22  **G.    The Asset Purchase Agreement**

23      The salient terms of the Asset Purchase Agreement, which is attached as <u>Exhibit 1</u> to the

24  Declaration of Theresa Peifer filed in Support of the Motion, are the following:[1]

25      1.    The assets to be purchased by Purchaser consist of substantially all of Debtor's assets,

26

27  ────────────────────
[1] To the extent that the summaries of the sections of the Asset Purchase Agreement herein are inconsistent or contradict
the actual Agreement, the Asset Purchase Agreement shall control. Capitalized terms used and not defined in these

28  sections have the meanings set forth in the Asset Purchase Agreement.

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

including: (i) all of the Debtor's accounts receivables, (ii) a buyout of several transportation truck

leases held by Debtor; (iii) all machinery, plant, vehicles, small tools, equipment, computers,

inventory, spare parts, fittings, supplies and other tangible personal property of the Debtor; (iv) all of

the Debtor's goodwill and all trademarks; (v) all of the Debtor's "Intellectual Property Rights" (as

defined in the Asset Purchase Agreement); (vi) all rights under "Governmental Authorizations,

Licenses & Permits" (as defined in the Asset Purchase Agreement); (vii) all operating data,

including customer lists and information relating to customers and suppliers; (viii) all other assets,

whether tangible or intangible, that are or ever have been used by Seller in its businesses excluding

the Excluded Assets (as defined in the Asset Purchase Agreement) for the cash purchase price of

$500,000 plus the assumption of liability under the Assumed Leases for real estate listed in Schedule

2.1(f). The assets of the Debtor to be purchased by Purchaser are defined as the "Purchased Assets"

and are identified in Section 2.1 of the Asset Purchase Agreement. The assets that are excluded from

the proposed sale are referred to in the Asset Purchase Agreement as "Excluded Assets" and are

defined in Section 2.2 as defined in the Asset Purchase Agreement. Theresa Peifer Dec. ¶17.

    2.    <u>Purchase Price</u>.  Subject to the terms and conditions set forth in this Agreement and in

reliance upon the representations and warranties of the Parties set forth herein, at the Closing, the

purchase price to be paid by the Purchaser in exchange for the Purchased Assets (the "Purchase

Price") is $500,000, which will be paid as follows: (i) to the Lien Lender (CCG), cash sufficient to

fully satisfy the First Lien Indebtedness (CCG Loans), (ii) to the applicable creditor, cash sufficient

to fully satisfy the Cure Costs, limited to $51,101.22 (on the Compton and Hayward Properties); (iii)

cancellation of the Prepetition Loan in the sum of $100,000; (iv) assumption by the Purchaser of the

Assumed Liabilities (the Compton Sublease (defined in Schedule 2.1(f)); and (v) the then remaining

balance thereof (the "Net Cash Consideration") to the Seller; <u>provided</u>, <u>however</u>, the Purchase Price

will be reduced dollar for dollar for the amount by which the Seller's Cash and Cash Equivalents at

Closing are less than $100,000. In addition, at Closing the Purchaser will accept the return of the

three (3) vehicles under the Prepetition Lease and forgive the remaining balance of the Prepetition

Lease of approximately $92,583.66.

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

3.      The Purchaser will acquire the Purchased Assets "as is," "where is" and "with all

faults," and without any representation or warranty expressed or implied relating to the condition or

value of the Purchased Assets, except as otherwise identified in the Asset Purchase Agreement.

**H.      The Proposed Bidding Procedures and Breakup Fee**

1. <u>Stalking Horse Bid</u>. The Purchaser has made an initial bid of $500,000 in cash plus

estimated assumption of Post-Closing Contract Obligations.

2. <u>Qualifying Initial Overbid</u>. The qualifying initial overbid (the "Qualifying Initial

Overbid") shall be at least $600,000 in cash.

3. <u>Overbid Increments</u>. Subsequent overbids above the Qualifying Initial Overbid will be in

increments of no less than $50,000.

4. <u>Qualifying Overbidder</u>. To be a qualified overbidder and participate in the auction

described below ("Qualified Overbidder") an interested bidder must meet all of the following

requirements:

a. Deposit $50,000 into the Debtor's bankruptcy counsel's trust account via wire transfer by
no later than 3:00 p.m. (Pacific Time) on the date that is two business days before the date
of the Sale Hearing, to be held as earnest money deposit, and which will be fully refundable
if the Qualified Overbidder is not a winning bidder at the Sale; however, the $50,000
earnest money deposit will be forfeited if the Qualifying Overbidder is deemed to be the
winning bidder but fails to close on the Sale through no fault of the Debtor;

b. Submit a clean, signed version and redlined version of its asset purchase agreement
redlined against the Purchaser's Asset Purchase Agreement by no later than 3:00 p.m.
(Pacific Time) on the date that is two business days before the date of the Sale Hearing, to
Debtor's counsel Edward D. Baker, 2801 W. Empire Ave., Burbank, CA91504, (818) 748-
3434, ebaker@bleaufox.com; a Word version of the Purchaser's Asset Purchase Agreement
will be provided by Debtor's counsel upon request by email to a potential overbidder;

c. Submit proof of funds sufficient to pay the purchase price for the Sale by 3:00 p.m.
(Pacific Time) on the date that is two business days before the date of the Sale Hearing;

5. <u>Breakup Fee</u>. $50,000 (the "Breakup Fee") payable to the Purchaser;

6. <u>Auction</u>. The auction will take place in Courtroom 1575 located at 255 E. Temple Street,

Los Angeles, California on the same date and at the same time as Sale Hearing;

7. <u>Hearing on the Sale</u>. Following the auction to be held in the abovementioned courtroom,

the Debtor will request that the Court approve the best overall offer made on the Debtor's assets and,

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

thus, the winning bidder as the Purchaser of the Sale;

8. <u>Closing</u>. The winning bidder must close by no later than two (5) calendar days from the date of the entry of an unstayed sale order without regard to the pendency of an appeal from the order.

**III.**

**DISCUSSION**

**A.**    **The Court Should Authorize the Debtor to Sell the Assets to Purchaser in Accordance with the Terms of the Asset Purchase Agreement**

Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." In determining whether to approve the use, sale or lease of property other than in the ordinary course of business, the court must find "some articulated business justification." *See, e.g., In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) citing *In re Schipper (Fulton State Bank v. Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *Comm. of Equity SEC Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbots Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986) (adopting the "sound business judgment" test of *Lionel Corp.* and requiring good faith); *In re Delaware and Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991) (confirming adoption of the "sound business judgment" test in *Abbotts Dairies* in the Third Circuit).

In the Ninth Circuit, "cause" exists for authorizing the sale of estate assets when such a sale is in the best interests of the estate, and a sound business justification exists for approving the sale. *In re Huntington, Ltd.*, 654 F.2d 578 (9th Cir. 1981); *In re Winter*, 83 B.R. 14, 19-20 (9th Cir. B.A.P. 1988). It is also a clear point of law in the Ninth Circuit that section 363 of the Bankruptcy Code enables the sale of substantially all assets of a debtor's estate after notice and a hearing. *In re Qintex Entertainment, Inc.*, 950 F.2d 1492 (9th Cir. 1991).

In determining whether a sale satisfies the business judgment standard, the Debtor must show: (1) that there is a sound business reason for the sale; (2) accurate and reasonable notice of the sale has been given to all interested persons; (3) the sale yields an adequate price (i.e., one that is fair and reasonable); and (4) that the parties to the sale have acted in good faith. *Titusville Country Club*

9

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

*v. Pennbank* (*In re Titusville Country Club*), 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *see also, In re Walter*, 83 B.R. at 19-20.

In this chapter 11 case, Debtor has met all four of these requirements, and the sale is in the best interests of the estate.

**i.    Accurate and Reasonable Notice Has Been Given to All Interested Parties**

Bankruptcy Code Section 363(b)(1) provides that the Debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Section 102(1) of the Bankruptcy Code defines "after notice and a hearing" as after such notice as is appropriate in the particular circumstances, and such opportunity for hearing as is appropriate in the particular circumstances. 11 U.S.C. § 102(1)(A).

Rule 6004(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides, in pertinent part, that notice of a proposed sale not in the ordinary course of business must be given pursuant to Bankruptcy Rule 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with Bankruptcy Code section 363(b)(2) of the Bankruptcy Code. Fed.R.Bankr.P. 6004(a). Rule 2002(a)(2) requires at least 21 days' notice by mail of a proposed sale of property of the estate other than in the ordinary course of business, unless the Court for cause shown shortens the time or directs another method of giving notice. Fed.R.Bankr.P. 2002(a)(2); *see also*, Local Bankruptcy Rule 9013-1(d)(2) (notice of motion and motion be served at least 21 days before the hearing on the date specified in the notice.)

Bankruptcy Rule 6004(c) provides that a motion for authority to sell property free and clear of liens or other interests must be made in accordance with Bankruptcy Rule 9014 and must be served on the parties who have liens or other interests in the property to be sold. Fed.R.Bankr.P. 6004(c).

In addition, Local Bankruptcy Rule 6004-1(f) requires that an additional copy of the notice be submitted to the Clerk of the Bankruptcy Court together with a document Form 6004-2 at the time of filing for purposes of publication. L.B.R. 6004-1(f).

Bankruptcy Rule 6006(a) provides that a proceeding by a party to assume, reject, or assign an

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1  executory contract or unexpired lease under, other than as part of a plan, is governed by Bankruptcy

2  Rule 9014. Fed.R.Bankr.P. Rule 6006(a). Bankruptcy Rule 6006(c) provides that notice of a motion

3  made pursuant to Bankruptcy Rule 6006(a) must be served on the nondebtor counterparty to lease or

4  contract, other parties as the court may direct, and the U.S. Trustee. Fed.R.Bankr.P. 6006(c).

5      The Debtor has complied with all of the above provisions of the Bankruptcy Code, the

6  Bankruptcy Rules and the Local Bankruptcy Rules. The Debtor has complied with Bankruptcy Rules

7  6004(a) and 2002(a)(2), (c)(1), and (k), and 6006(a) and (c).

8      The notices have been filed contemporaneously herewith, including the date time and place

9  of the hearing on the Motion for Order Authorizing the sale, and the deadline for objecting thereto,

10  which were served on the Debtor's secured creditors, Debtor's twenty largest unsecured creditors,

11  the U.S. Trustee, all of the Debtor's known creditors, all nondebtor counterparties to the executory

12  contracts and unexpired leases that are being assumed and assigned, and all parties requesting

13  special notice. The Debtor also served the Purchaser.

14      The Debtor has complied with Rule 6004(c) because the notice and the Sale Motion was also

15  served upon the parties who have alleged liens, claims, encumbrances and/or interests in the

16  Acquired Assets (or potentially Acquired Assets). The Debtor has complied with the requirements of

17  Local Bankruptcy Rule 6004-1(f) because the Debtor has filed the Notice and Form 6004-2 with the

18  Clerk of the Bankruptcy Court. Thus, the Debtor has provided accurate and reasonable notice of the

19  Sale Motion in compliance with all applicable Bankruptcy Rules and Local Bankruptcy Rules.

20      **ii.    The Terms of the Sale Validate Debtor's Sound Business Purpose**

21      As discussed above, there must be some articulated business justification, other than

22  appeasement of major creditors, for using, selling or leasing property out of the ordinary course of

23  business before the bankruptcy court may order such disposition under Section 363(b). *In re Lionel*

24  *Corp.*, 722 F.2d at 1070. The Ninth Circuit Bankruptcy Appellate Panel in *Walter v. Sunwest Bank*

25  (*In re Walter*), 83 B.R. 14, 19 (9th Cir.B.A.P.1988) adopted a flexible case-by-case test to determine

26  whether the business purpose for a proposed sale justifies disposition of property of the estate under

27  Bankruptcy Code section 363(b) as follows:

28      Whether the proffered business justification is sufficient depends on the case. As the Second

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

> Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to
> the proceeding and, accordingly, act to further the diverse interests of the Debtor, creditors
> and equity holders, alike. He might, for example, look to such relevant facts as the
> proportionate value of the asset to the estate as a whole, the amount of elapsed time since the
> filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near
> future, the effect of the proposed disposition on future plans of reorganization, the proceeds
> to be obtained from the disposition vis-a-vis any appraisals of the property, which of the
> alternatives of use, sale or lease the proposal envisions and, most importantly perhaps,
> whether the asset is increasing or decreasing in value. This list is not intended to be
> exclusive, but merely to provide guidance to the bankruptcy judge.

*In Re Walter*, 83 B.R. at 19-20, citing In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986).

The terms of the Asset Purchase Agreement clearly substantiate the Debtor's business decision that the sale serves the best interests of the estate as a whole, and Debtor's secured and unsecured creditors, and merits the approval of the Court. The Purchase Price of $500,000 will be used to pay off all Debtor's secured and collateralized debts. The Purchase Price will also be used to meet any Cure Costs with the Compton and Hayward leases. The Net Cash Consideration remaining will then be available to pay Debtor's priority unsecured creditors, and unsecured creditors at a rate much greater than would be available in a liquidation or chapter 7 scenario.

As stated above, Debtor will assign, and Purchaser will assume, the Compton and Hayward leases for Debtor's leased office and warehouse space. Theresa Peifer Dec. ¶17. Neither the Compton nor the Hayward lease provides Debtor any option to renew at the end of the upcoming term, and the Hayward Landlord has stated unequivocally that no such option will be given to Debtor. Theresa Peifer Dec. ¶¶ 11-13. Moreover, Debtor's insurance for motor truck cargo, general liability, and commercial liability, is set to expire on **June 19, 2018**. Theresa Peifer Dec. ¶6. Debtor's motor truck cargo insurance carrier has stated that it will not renew Debtor's insurance at the end of the current term, and Debtor has struggled to locate a new and willing insurance carrier as of this date.

As further justification for the sale, both of Debtor's secured creditors hold collateralized interests in substantially all of Debtor's assets, including cash collateral and accounts receivables. Theresa Peifer Dec. ¶9. Debtor has also entered into a stipulation with CCG which provides that in the event of a default, a lapse in insurance coverage, or under several other circumstances in which

12

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

are likely to occur in the coming months, CCG may repossess all CCG trucks, and other collateral including cash collateral and accounts receivables. This would effectively end Debtor's operations and creates a high exposure to the estate as a whole. Rather than wait for such circumstances to unfold, the proposed asset sale presents a solution that will preserve the value of the business for the benefit of the estate, payoff Debtor's secured creditors, and leave a sizable amount of Net Cash Consideration to satisfy claims of priority and nonpriority unsecured creditors.

For all of the reasons explained above, the estate is exposed to great risk if Debtor continues to operate in the long-run, and several events are on the horizon which could tank Debtor's business completely, including lapses in Debtor's insurance coverage and non-renewal of Debtor's office and warehouse leases. As a result, the best possible way for Debtor to maximize the value of its assets/business is for the Debtor to consummate an expedited sale of substantially all of its assets. As explained in Declaration of Edward D. Baker in Support of the Sale Motion, the Debtor has engaged prospective buyers seeking to buy pieces of the estate, including two buyers who expressed serious interest in making an offer for Debtor's leased truck assets. The Debtor is confident that its proposed asset sale to the Purchaser, or to a successful overbidder, is the best option available to the Debtor to maximize the value of its assets and recovery for the Debtor's creditors. The approval of the proposed sale will also minimize the disruption of the business, potentially provide new employment to many of the Debtor's loyal employees, and ensure continued services to the Debtor's clients. The Debtor, therefore, submits that its proposed sale is justified by sound business purposes, satisfying the first requirement for a sale under section 363(b) of the Bankruptcy Code.

### iii.    The Sale Price is Fair and Reasonable and Cash Will Be Left Over to Pay Unsecured Creditors

In order to be approved under Section 363(b) of the Bankruptcy Code, the purchase price must be fair and reasonable. *Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal Indus., Inc.)*, 63 B.R. 361, 368 (Bankr. N.D. Ohio 1986). However, it is a central tenant of any asset sale that "the Debtor's main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Resources, Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), aff'd, 147 B.R. 650 (S.D.N.Y. 1992). "It is a well-established principle of

13

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

bankruptcy law that the objective of bankruptcy rules and the [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988); *see also, In re Wilde Horse Enterprises*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ("In any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold").

Here, the purchase price of $500,000 for substantially all of Debtor's assets is fair and reasonable. The assets to be sold include One (1) 2015 Kenworth T270 Truck; Two (2) 2016 Kenworth T270 Trucks; One (1) 2017 Kenworth T270 Truck; One (1) 2015 Mercedes Sprinter Van; Two (2) 2016 Mercedes Sprinter Vans; Related Transportation Trucking Equipment; Accounts Receivables.

Debtor received an offer of $10,000 per truck for the four CCG units. The proposed sale presents a much higher value to the estate than would be received for those same assets through this offer. Additionally, Purchaser holds outstanding lease obligations on the three (3) Mercedes Sprinters listed above, totaling approximately $92,583.66, which Purchaser has agreed to forgive under the terms of the Asset Purchase Agreement. This forgiven amount alone greatly benefits the estate and Debtor's unsecured creditors, as such amount would remain due if the sale were not completed.

With regard to Accounts Receivables, the total amount of accounts receivables listed in the Debtor's last Monthly Operating Report is approximately $272,000. However, at least some these accounts are at risk for nonpayment, including the over sixty (60) small accounts with less than $5,000 each outstanding over the next thirty (30) days. The resources that Debtor would have to expend to track down and collect from these accounts in a liquidation scenario is greatly outweighed by the $500,000 purchase price, which includes the purchase of Debtor's accounts receivables. Debtor has other accounts receivables, including approximately 60% of total accounts receivables from ten (10) bigger accounts, which are also at risk and may require the expenditure of resources to recover. Even if a full value of $272,000 is given to Debtor's accounts receivables, as listed in the last Monthly Operating Report, that leaves approximately $228,000 for the four trucks and three

14

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1   vans plus the accompanying equipment. This is an extremely favorable deal for these assets, and will

2   yield high value to the estate and Debtor's creditors, particularly when combined with the assignment

3   of the Compton and Hayward lease obligations.

4        The proposed sale of the above listed assets for $500,000, and the potential for an overbid at

5   the hearing, is a fair and reasonable price for the assets, and such a sale is in the best interests of the

6   estate and within the Debtor's sound business judgment.

7        **iv.    The Sale is Made in Good Faith**

8        When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is

9   required to make a finding with respect to the "good faith" of the Purchaser. *In re Abbotts Dairies*,

10  788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to

11  circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of Section

12  1129, that the Bankruptcy Court independently scrutinizes the debtor's reorganization plan and

13  makes a finding that it has been proposed in good faith. *Id.* at 150.

14       "Good faith" encompasses fair value, and further speaks to the integrity of the transaction. *In*

15  *re Wilde Horse Enterprises*, 136 B.R. at 842. With respect to the debtor's conduct in conjunction

16  with the sale, the good faith requirement "focuses principally on the element of special treatment of

17  the Debtor's insiders in the sale transaction." *See, In re Industrial Valley Refrig. and Air Cond.*

18  *Supplies, Inc.*, 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987). With respect to the Purchaser's conduct, this

19  Court should consider whether there is any evidence of "fraud, collusion between the purchaser and

20  other bidders or the [debtor], or an attempt to take grossly unfair advantage of other bidders." *In re*

21  *Abbotts Dairies*, 788 F.2d at 147, In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1198 (7th Cir.

22  1978); *In re Wilde Horse Enterprises, Inc.*, 136 B.R. at 842; *In re Alpha Industries, Inc.*, 84 B.R.

23  703, 706 (Bankr. D. Mont. 1988). In short, "[l]ack of good faith is generally determined by

24  fraudulent conduct during the sale proceedings." *In re Apex Oil Co.*, 92 B.R. 847, 869 (Bankr. E.D.

25  Mo. 1988), *citing In re Exennium, Inc.*, 715 F.2d 1401, 1404-05 (9th Cir. 1983). *See also, In re M*

26  *Capital Corp.*, 290 B.R. 743 (B.A.P. 9th Circuit, 2003).

27       In *In re Filtercorp, Inc.*, 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the

28

15

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

following test for determining whether a Purchaser is a good faith purchaser:

> A good faith Purchaser "is one who buys 'in good faith' and 'for value.'" [citations omitted.] [L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" [citations omitted.]

*Filtercorp*, 163 F.3d at 577.

The Ninth Circuit made clear in *Filtercorp* that this standard for determining good faith is applicable even when the Purchaser is an insider. *Filtercorp*, 163 F.3d at 577 (finding that the insider-buyer was a good faith purchaser where there was no sign of collusion, the insider-buyers' bid was $450,000, and the assets were worth between $400,000 and $600,000); *See also*, *In re Bakalis*, 220 B.R. 525 (Bankr.E.D.N.Y.1998) ("It is not *'per se* bad faith' for an insider to purchase assets of a debtor, and a sale to him without more would not suffice to show a lack of good faith."); *Citicorp Venture Capital, Ltd. v Comm. of Creditors Holding Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 821 (W.D.Pa.1997) ("[N]othing in the Bankruptcy Code proscribes insiders from purchasing claims against a debtor or requires insiders to conduct themselves in any particular way or make any particular disclosures when so doing."); *Penn Mutual Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship)*, 134 B.R. 165 (Bankr.D.Md.1991) ("There is no prohibition against a private sale or against a sale to insiders ..."); *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 842 (Bankr.C.D.Ca.1991) ("It is not bad faith *per se* for an insider to purchase property from an estate, even where the insider has a fiduciary duty to the estate.").

While Debtor does not believe Purchaser falls within the definition of insider under Bankruptcy Code §101(31), because James and Theresa Peifer were divorced in 2013, and James Peifer is no longer employed by Debtor in any capacity, Theresa Peifer Dec. ¶14, out of an abundance of caution, Debtor has disclosed its relationship with Purchaser. There was no special treatment of Purchaser in the sale transaction, and indeed both Debtor and Debtor's attorney negotiated the sale transaction with Purchaser at arm's length. Debtor is not aware of any fraud or collusion between Debtor and Buyer, and the assets were marketed to other interested buyers, who were also provided with notice of the hearing and the procedures for bidding on the assets at the hearing on the sale. Additionally, Debtor did not take grossly unfair advantage of any other bidders.

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

Finally, even if the Court does find that Purchaser is an insider, the price for the assets involved in the sale is fair, as explained above, and the sale should be approved because it is in the best interest of the estate as a whole.

The Asset Purchase Agreement was negotiated at arm's length with all parties involved acting in good faith. Based on the foregoing, the Debtor submits that the Court should find that the Purchaser, or a successful overbidder, constitutes a good faith purchaser entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

**B.    The Sale of Assets Should Be Free and Clear of All Interests, Including Liens, Claims, and Encumbrances Under Bankruptcy Code Section 363(f)**

Section 363(f) of the Bankruptcy Code provides, in relevant part, as follows:

The trustee may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—

> (1) applicable non-bankruptcy law permits the sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)  Such interest is in bona fide dispute; or
>
> (5)  such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

A debtor need only meet the provisions of one of the five subsections of section 363(f) in order for a sale of property to be free and clear of all liens, claims and interests. *In re Whittemore*, 37 B.R. 93, 94 (Bankr.D.Or.1984).

**i.    The Sale is Permissible Pursuant to Section 363(f)(2) of the Bankruptcy Code**

As stated in the declaration of Edward D. Baker in Support of the Sale Motion, priority secured creditor CCG has consented to the asset sale, which provides for payment of the outstanding CCG loans in full. CCG will also be reimbursed its reasonable attorneys fees. Therefore the assets involved in the sale, in which CCG holds a security interest by way of its liens against substantially

17

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

all of Debtor's assets, should be sold free and clear of any such liens and encumbrances by way of CCG's consent.

**C.    The Court Should Authorize the Debtor's Assumption and Assignment of Certain Unexpired Leases Pursuant to the Proposed Procedures**

Bankruptcy Code sections 365(a) and 1107(a) authorize a debtor in possession, "subject to the Court's approval . . . [to] assume or reject any executory contract or unexpired lease of the debtor." A debtor in possession may assume or reject executory contracts for the benefit of the estate. *In re Klein Sleep Products, Inc.*, 78 F.3d 18, 25 (2d. Cir.1996); *In re Central Fla. Metal Fabrication, Inc.*, 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); *In re Gucci*, 193 B.R. 411, 415 (S.D.N.Y.1996). In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it. *In re Continental Country Club, Inc.*, 114 B.R. 763, 767 (Bankr.M.D.Fla.1990); *see also In re Gucci*, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice. *In re Prime Motors Inns*, 124 B.R. 378, 381 (Bankr.S.D.Fla.1991), *citing Lubrizol Enterprises v. Richmond Metal Finishers*, 756 F.2d 1043, 1047 (4th Cir.1985), *cert. denied*, 475 U.S. 1057 (1986).

Pursuant to Bankruptcy Code section 365(b)(1), assumption of executory contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary loss resulting from the defaults; and (c) provide adequate assurance of future performance under the contract or lease. 11 U.S.C. § 365(b)(1); *see also In re Bowman*, 194 B.R. 227, 230 (Bankr.D.Ariz.1995), *In re AEG Acquisition Corp.*, 127 B.R. 34, 44 (Bankr.C.D.Cal.1991), *aff'd* 161 B.R. 50 (9th Cir.B.A.P.1993).

Under section 365(f) of the Bankruptcy Code, a debtor, after assuming a contract, may assign its rights under the contract to a third party. 11 U.S.C. § 365(f); *see also In re Rickel Home Center, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate."); *Weingarten Nostat, Inc. v. Service Merchandise Company, Inc.*, 396 F.3d 737, 742 (6th Cir. 2005); *see also In re Headquarters Dodge, Inc.*, 13 F.3d

18

674, 682 (3d Cir. 1994) (noting that the purpose of section 365(f) is to assist the trustee in realizing

the full value of the debtor's assets); *In re Crow Winthrop Operating Partnership,* 241 F.3d 1121,

1124 (9th Cir. 2001) (finding that section 365(f) permits the assignment of contracts by debtors

notwithstanding de facto anti-assignment clauses so as to permit debtors from realizing the full value

of their assets). Pursuant to section 365(f)(1) of the Bankruptcy Code, a debtor may assign an

executory contract or unexpired lease pursuant to section 365(f)(2) of the Bankruptcy Code

notwithstanding any provision in such executory contract or unexpired lease that prohibits, restricts

or conditions the assignment of such executory contract or unexpired lease.

Pursuant to Bankruptcy Code section 365(f)(2) of the Bankruptcy Code, a debtor may assign

its executory contracts and unexpired leases, provided the debtor first assumes such executory

contracts and unexpired leases in accordance with Bankruptcy Code section 365(b)(1), and provides

adequate assurance of future performance by the assignee. Section 365(f)(2)(B) requires, however,

that adequate assurance of future performance by an assignee exist. 11 U.S.C. § 365(f)(2)(B). The

purpose of the adequate assurance requirement is to protect the interests of the non-debtor party to an

assigned contract, as section 365(k) of the Bankruptcy Code relieves a debtor from liability for any

breach of a contract that may occur after an assignment. *Cinicola v. Scharffeberger,* 248 F.3d 110,

120 (3d Cir. 2001). Adequate assurance of future performance is not required for every term of an

executory contract or unexpired lease, but only such terms that are "material and economically"

significant. *In re Fleming Cos., Inc.*, 499 F.3d 300, 305 (3d Cir. 2007). The meaning of "adequate

assurance of future performance" depends on the facts and circumstances of each case, but should be

given a "practical, pragmatic construction." *In re DBSI, Inc.*, 405 B.R. 698, 708 (Bankr. D. Del.

2009); *see also In re Decora Indus.*, 2002 U.S. Dist. LEXIS 27031, at *23 (D. Del. 2002)

("[A]dequate assurance falls short of an absolute guarantee of payment."). Adequate assurance may

be provided by demonstrating the assignee's financial health and experience in managing the type of

enterprise or property assigned. See, *e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y.

1986) (finding that adequate assurance is present when prospective assignee of lease from debtor has

financial resources and has expressed willingness to devote sufficient funding the business to give it

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1    strong likelihood of success).

2        As noted above, the Asset Purchase Agreement requires the Debtor to assign the unexpired

3    leases as identified by the Purchaser, including the Compton and Hayward Property leases. It is

4    therefore an appropriate exercise of the Debtor's business judgment to seek to assign those

5    unexpired leases to facilitate the Debtor's efforts to maximize value for their creditors and estate

6    through the sale transaction. Neither the Compton nor the Hayward lease has an option for renewal

7    of the lease term, and the Hayward Landlord has specifically stated that it will not renew Debtor's

8    lease. An assignment of the remaining Compton and Hayward lease terms therefore avoids the very

9    real possibility that Debtor will not be able to renew the leases, nor find adequate replacement

10   warehouse and office space leases. In this scenario, Debtor's business would fail, and the sale

11   therefore protects the estate from this very real risk.

12       The Debtor proposes that adequate assurance of future performance has been provided

13   because the Purchaser has substantial experience in management in the Debtor's industry, and has

14   shown the financial commitment and wherewithal to honor the obligations under the assigned leases.

15   **(If individual counterparties to executory contracts have concerns about this requirement and**

16   **the assumption and assignment of their individual lease or executory contract then they are**

17   **encouraged to contact the Purchaser directly to discuss those concerns before they consider**

18   **filing an objection to this Motion.)** Additionally, the Debtor submits that the notice provisions and

19   objection deadline for counterparties to raise objections to the assumption and assignment of the

20   leases, described herein and which are set forth in the Cure Notice are adequate to protect the rights

21   of the nondebtor counterparties to the executory contracts and unexpired leases.

22       The Debtor also requests that any party failing to object to the proposed transactions be

23   deemed to consent to the treatment of its unexpired leases under section 365 of the Bankruptcy

24   Code. *See Hargrave v. Twp. of Pemberton (In re Tabone, Inc.),* 175 B.R. 855, 858 (Bankr. D.N.J.

25   1994) (by not objecting to sale motion, creditor deemed to consent); *see also, Pelican Homestead v.*

26   *Wooten (In re Gabeel),* 61 B.R. 661, 667 (Bankr. W.D. La. 1985)

27

28

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

1

2 **D. The Court Should Approve the Bidding Procedures and the Breakup Fee Described Herein**

3         Bankruptcy Rules 2002 and 6004 govern the scope of the notice to be provided in the event a

4 debtor elects to sell property of the estate under 11 U.S.C. § 363; however, with respect to the

5 procedures to be adopted in conducting a sale outside the ordinary course of a debtor's business,

6 Bankruptcy Rule 6004 provides only that such sale may be by private sale or public auction, and

7 requires only that the debtor provide a list of the property sold together with the price received upon

8 consummation of the sale. FED.R.BANKR.P.6004(f).

9         Neither the Bankruptcy Code nor the Bankruptcy Rules contains specific provisions with

10 respect to the procedures to be employed by a debtor in conducting a public or private sale.

11 However, the Bankruptcy Court has the power to establish reasonable sale procedures. *See, e.g.,*

12 *Doehring v. Crown Corp. (In re Crown Corporation)*, 679 F.2d 774 (9th Cir.1982). As one Court

13 has stated, "[i]t is a well-established principle of bankruptcy law that the objective of bankruptcy

14 rules and the [debtor's] duty with respect to such sales is to obtain the highest price or greatest

15 overall benefit possible for the estate." *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 131

16 (Bankr.N.D.Ga.1988). Additionally, courts have long recognized the need for competitive bidding at

17 hearings on private sales; "[c]ompetitive bidding yields higher offers and thus benefits the estate.

18 Therefore, the objective is 'to maximize bidding, not restrict it.'" *Id.*

19         A corollary to these principles is that the court should not "cherry-pick" among contractual

20 provisions, objecting to select individual portions, if the agreement as a whole is supported by an

21 articulated business judgment. At least one bankruptcy court has expressly applied this corollary to a

22 transaction including breakup and overbid provisions in the sale of the debtor's business. In *In re*

23 *Crowthers McCall Pattern, Inc.*, 114 B.R. 877 (Bankr.S.D.N.Y.1990), the court approved a

24 transaction including provisions relating to a breakup fee and a requirement that overbids be at least

25 $500,000. In responding to objections to other provisions of the agreement, the court held that:

26       The Court is not to second guess the inclusion of some provisions as long as the Agreement
      as a whole is within reasonable business judgment, and the subject provisions do not distort

27       the balance Congress struck in Chapter 11. *Cf. In re Ames Dep't Stores, Inc., Eastern*
      *Retailers Service Corp., et al.*, 115 B.R. 34, 37-38 (Bankr.S.D.N.Y.1990) (some contractual

28

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

provisions may be justified by the need to attract a prospective investor.).

114 B.R. at 886.

The Debtor believes that Bidding Procedures (if approved) could result in obtaining the highest purchase price possible for the Sale, under the circumstances of this case. An auction and sale process should render the best sale price available for the Debtor's business and substantially all of its assets.

The Breakup Fee is a provision of the Asset Purchase Agreement. In addition, as a whole, the Bidding Procedures will (i) foster competitive bidding among any serious potential purchasers; (ii) eliminate from consideration potential purchasers who do not have the financial ability to consummate the transaction in an expeditious manner; and (iii) ensure that the highest possible purchase price is obtained for the Sale under these circumstances. The Debtor believes that an auction of the Debtor's business and substantially all of its assets in accordance with the Bidding Procedures is in the best interests of the estate.

### E. The Debtor Requests that the Court Waive the Fourteen-Day Waiting Periods Under Bankruptcy Rules 6004(h) and 6006(d)

Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use sale or lease of property . . . is stayed until the expiration of fourteen days after entry of the Court order, unless the Court orders otherwise. Bankruptcy Rule 6006(d) has a similar provision with respect to an order approving of a debtor's assumption and assignment of unexpired leases and executory contracts. The Purchaser has indicated that it will be ready to close within days of the entry of an order of the Court approving the Sale. For all of the reasons set forth above, the Debtor believes that it is critically important that the Debtor and the Purchaser, or a successful overbidder, be permitted to consummate the Closing as soon after entry of the Sale Order as possible. Indeed, as previously indicated, failure to close expeditiously could cause irreparable harm to the Debtor and its creditors because the Debtor insurance is set to lapse on June 19, 2018. Thus, in order to facilitate the most expeditious closing possible, the Debtor requests that the Sale Order be effective immediately upon entry by providing that the fourteen-day waiting periods of Bankruptcy Rule 6004(h) and 6006(d) be waived.

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

# IV.

## CONCLUSION

The proposed asset sale, comprising a sale of the six leased trucks, related equipment, and accounts receivables for the total price of $500,000, is fair and reasonable, and is in the best interests of the estate and Debtor's creditors as a whole. Debtor's secured creditors will be paid in full, and a sizable amount of cash will be left over for Debtor's priority and nonpriority unsecured creditors. This presents a better alternative to reorganization, given impending lapses in Debtor's insurance, impending nonrenewal of Debtor's warehouse and office space leases, the risks of potential default on CCG's loans which could result in a total collapse of the business, and the general financial strain on the estate from costs associated with the bankruptcy, including continued legal fees and other professional expenses. For all the reasons discussed herein, Debtor respectfully requests that the Court enter an order (1) authorizing Debtor to sell its assets free and clear of liens, claims, encumbrances and interests; (2) authorizing assignment of the Compton and Hayward leases; (3) establishing the requested bidding procedure and approving the proposed breakup fee; and grant other and further relief as the Court sees fit.

Respectfully submitted,

Date: 5/10/2018                                          BLEAU FOX, a P.L.C.


                                                        /s/ Edward D. Baker
                                                        Edward D. Baker

                                                        Attorneys for debtor in possession,
                                                        Business Solutions Transport, Inc.

**MOTION FOR ORDER AUTHORIZING ASSET SALE**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

BLEAU FOX, a P.L.C.
2801 West Empire Avenue
Burbank, California 91504

A true and correct copy of the foregoing document entitled (*specify*):

**Motion for Entry of Order: 1) Authorizing Debtor to Sell Assets Free and Clear of Liens, Claims, Encumbrances and Interests; 2) Authorizing Assignment of Certain Unexpired Leases; 3) Establishing Bidding Procedures  and Approving Breakup Fee; 4) Granting Other and Further Relief; and Memorandum of Points and Authorities in Support Thereof**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 5/10/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☐ Service information continued on attached page

dare.law@usdoj.gov; aalper@frandzel.com; rwaddell@frandzel.com; ggabriel@gtglaw.org

ustpregion16.la.ecf@usdoj.gov

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 5/10/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

CWS Trucking, ATTN: Craig Shaw, 1701 Carlos Dr., Las Vegas, NV 89123
AT&T PO Box 5019, Carol Stream, IL 60197
IOU Financial, 600 Townpark Lane, Ste. 140, Kennesaw, GA 30144

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 5/10/2018, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Sandra R. Klein, 225 E. Temple Street, Suite 1582, Los Angeles, CA 90012

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 5/10/2018 | Edward D. Baker | /s/ Edward D. Baker |
|---|---|---|

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**SERVED VIA EMAIL**

**Secured Creditors:**

Commercial Credit Group
Reed S. Waddell
rwaddell@frandzel.com

Peifer Trucking, Inc.
Mike Robl
michael@roblgroup.com

**20 Largest Unsecured Creditors:**

Comref So. Ca. Industrial Sub A, LLC
Lena Vo
Lena.vo@cbre.com

Enterprise Rent-A-Truck
Jessica Togo
jessica.s.togo@ehi.com

Department of Motor Vehicles
John Reule
john.reule@dmv.ca.gov

Dhollandi US, LLC
Alice-Faye Peugh
administration.us@dhollandi.com

Freight Data Software, Inc.
Debbie Ferguson
dferguson@freightdatasoftware.com

Grand American Tires
meltiremanbush@gmail.com

ICW Group
firstnotice@icwgroup.com

Inland Lease and Rental
vwaller@inland-group.com

JB Dewar
Melanie Sievers
Melanie@jbdewar.com

Prologis TLF LLC
Jan A. Gruen, Esq.
jgruen@hornerlawgroup.com

State Compensation Insurance Fund
scif.legal.bk@scif.com

The Home Depot
customer_care@homedepot.com

Unifirst Holdings, Inc.
Steven Sintros
steven_sintros@unifirst.com

James Peifer
jamespeifer@me.com

4IMPRINT
Connie Olsen
colson@4imprint.com

WELLS FARGO BANK SMALL BUSINESS
SBLBKInquiry@wellsfargo.com

Office of Labor Commissioner
acamarillo@dir.ca.gov